UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARY DESFASSIAUX, | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 8663 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| BLATT, HASENMILLER, LEIBSKER & MOORE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This suit under the Fair Debt Collection Practices Act ("FDCPA") arises out of a debt collection action filed in state court by Blatt, Hasenmiller, Leibsker & Moore, LLC in May 2014 on behalf of its client TD Bank against Mary Desfassiaux over an alleged $3536.43 debt. Doc. 1; Doc. 33 at ¶ 4. Blatt filed the action at the Richard J. Daley Center Courthouse in Chicago, which is part of the First Municipal District of the Circuit Court of Cook County, Illinois. Doc. 1-1 at 2; Doc. 10 at ¶ 9; Doc. 33 at ¶ 4. At the time, Desfassiaux lived in Maywood, which lies in the Fourth Municipal District. Doc. 1-2; Doc. 33 at ¶ 37. Desfassiaux filed for bankruptcy in October 2014, and the collection action was dismissed. Doc. 33 at ¶¶ 5-6. She was not served in that action. *Id*. at ¶ 7.

The FDCPA requires debt collectors to file collection actions in the "judicial district or similar legal entity" where the relevant contract was signed or where the debtor resides. 15 U.S.C. § 1692i(a)(2). In *Newsom v. Friedman*, 76 F.3d 813 (7th Cir. 1996), the Seventh Circuit held that § 1692i(a)(2) allows a debt collector to file a collection suit in a municipal district of the Cook County Circuit Court other than the one where the debtor resides. *Id*. at 819 (holding that because "the Municipal Department districts are neither defined as judicial districts, nor …

function as judicial districts," they "do not fit within the definition of 'judicial district' as employed by the FDCPA"). Six months before Blatt filed its collection action against Desfassiaux, a split panel of the Seventh Circuit, "see[ing] no reason to depart from [the court's] existing approach in § 1692i cases," adhered to *Newsom*. *Suesz v. Med-1 Solutions, LLC*, 734 F.3d 684, 686 (7th Cir. 2013). The panel dissent called for *Newsom* to be overruled. *Id*. at 691-95 (Posner, J., dissenting).

On February 6, 2014, four months before Blatt filed its collection action against Desfassiaux, the Seventh Circuit granted rehearing en banc in *Suesz* and vacated the panel opinion. And on July 2, 2014, about two months after Blatt filed the collection action, the en banc court overruled *Newsom*, holding that "the correct interpretation of 'judicial district or similar legal entity' in § 1692i is the smallest geographic area that is relevant for determining venue in the court system in which the case is filed." *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636, 638 (7th Cir. 2014) (en banc). Critically for this case, the Seventh Circuit gave its holding retroactive effect, even though debt collectors "ha[d] relied on *Newsom* to allow them to choose venue anywhere in the appropriate county." *Id*. at 649.

Desfassiaux promptly brought this FDCPA suit against Blatt, Doc. 1—one among dozens that her lawyers have brought under § 1692i(a)(2) against Blatt and other debt collectors arising from collection actions filed prior to the en banc decision in *Suesz*, Doc. 26 at 9. Desfassiaux and Blatt cross-moved for summary judgment. Docs. 17, 20. In an oral ruling, the court denied Desfassiaux's motion for failure to establish certain elements of her claim. Doc. 47. For the following reasons, Blatt's motion is denied as well.

Blatt contends that it cannot have violated § 1692i(a)(2) because it never served Desfassiaux with summons in the collection action. Doc. 26 at 11-13. According to Blatt,

2

§ 1692i(a)(2) is intended to prevent debt collectors from obtaining default judgments by strategically filing cases at inconvenient courthouses in an effort to dissuade the alleged debtor from appearing and defending. Because, the argument goes, a default judgment cannot be entered until the debtor is served, the venue provision cannot be violated unless the debtor is served. This argument has been accepted by Fifth Circuit and several decisions from this District. *See*, *e.g.*, *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 732 F.3d 440, 445-48 (5th Cir. 2013); *Gillis v. Blitt & Gaines, P.C.*, 2015 WL 5821637, at *2-3 (N.D. Ill. Oct. 1, 2015); *Taylor v. Blitt & Gaines, P.C.*, 2015 WL 5821704, at *3 (N.D. Ill. Oct. 1, 2015); *Abu-Samra v. Cavalry SPV I, LLC*, 2015 WL 4658702, at *2-4 (N.D. Ill. Aug. 5, 2015).

This court respectfully declines to follow those decisions because, in this court's view, they cannot be reconciled with *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013). *Phillips* held that, even though the debtor had not been served, the defendant debt collector could be held liable for violating the FDCPA's prohibitions against false representations and unfair practices by suing the debtor after the statute of limitations on the creditor's claim had run. As *Phillips* explained:

> [F]iling a complaint may cause actual harm to the debtor: a pending legal action, even pre-service, could be a red flag to the debtor's other creditors and anyone who runs a background or credit check, including landlords and employers. The debt collector may also use the pending legal action to pressure a debtor to pay back the debt informally, without serving the complaint—precisely the type of unfair practice prohibited by the FDCPA.

*Id*. at 1082-83 (alteration in original).

Echoing the above-cited district court decisions, Blatt argues that this passage from *Phillips* does not apply here because *Phillips* "involved different sections of the FDCPA directed at false representations and unfair practices, violations of which could potentially occur prior to actual service, whereas the purpose of the venue provision is to prevent default judgments by

3

way of forum shopping and a default judgment cannot occur until after a party has been served." Doc. 26 at 13 (internal quotation marks omitted). Blatt's argument is unpersuasive, as the reasoning of *Phillips* applies with equal force to alleged violations of § 1692i(a)(2). Although a default judgment cannot be obtained unless the debtor is served, the debt collector may file the collection action in a distant courthouse—for example, the collector could file suit against a Park Forest resident in the Third Municipal District in Rolling Meadows—and then use that filing as leverage to force the debtor to resolve the dispute informally rather than undertake the inconvenience of defending it. Such tactics are precisely what, according to *Phillips*, the FDCPA is designed to prevent, which means that a debt collector can be held liable for violating § 1692i(a)(2) even if the debtor is not served.

The fact that Desfassiaux seeks only statutory damages, Doc. 27 at 4; Doc. 33 at ¶ 12, provides an independent reason why Blatt's "no service, no § 1692i(a)(2) violation" argument cannot be reconciled with *Phillips*. In ruling that FDCPA plaintiffs alleging false representations and unfair practices could proceed despite never having been served with the debt collection action, *Phillips* explained that "even if no debtors were ever harmed by being sued but not served … [p]roof of injury is not required when the only damages sought are statutory." 736 F.3d at 1083. The same rationale applies here.

Blatt next argues that the FDCPA's bona fide error defense, 15 U.S.C. § 1692k(c), protects it from liability. Doc. 26 at 13-21. To successfully invoke this defense, Blatt must show that: (1) its FDCPA violation was unintentional; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid that error. *See Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005). The principal hurdle faced by Blatt arises from *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010),

4

which held that the defense "does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute." *Id*. at 604-05; *see also id*. at 587 ("bona fide errors in § 1692k(c) do not include mistaken interpretations of the FDCPA"). In an effort to distinguish *Jerman*, Blatt contends that its violation of § 1692i(a)(2) by suing Desfassiaux at the Daley Center rather than in Maywood did "not rest on its *own* interpretation of the law," but rather on "the controlling law in this Circuit" at the time it sued Desfassiaux. Doc. 26 at 14. The question whether, for purposes of *Jerman*, a debt collector's pre-*Suesz* violation § 1692i(a)(2) resulted from *its* incorrect interpretation of that provision, and thus whether the collector is precluded from invoking the bona fide error defense, has received conflicting answers in this District. *Compare Browne v. Bonewicz*, 2015 WL 6165033, at *3 (N.D. Ill. Oct. 20, 2015) (holding that the defense is unavailable for pre-*Suesz* violations), *Rowan v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 2015 WL 5920873, at *3-5 (N.D. Ill. Oct. 8, 2015) (same), *Conroy v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 2015 WL 5821642, at *2-3 (N.D. Ill. Oct. 1, 2015) (same), *Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, __ F. Supp. 3d __, 2015 WL 5117077, at *3 (N.D. Ill. Aug. 28, 2015) (same), *with Oliva v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 2015 WL 4253795, at *3-4 (N.D. Ill. July 14, 2015) (holding that the defense is available because the debt collector relied not on its own interpretation of § 1692i(a)(2), but on the Seventh Circuit's then-prevailing interpretation).

There is no need to choose sides and decide whether a debt collector could *ever* successfully invoke the bona fide error defense upon being sued for a pre-*Suesz* violation of § 1692i(a)(2) because, under the facts of *this* case, Blatt undeniably relied on its own legal judgment when deciding to sue Desfassiaux at the Daley Center rather than in Maywood. Six months before Blatt filed that action, the dissent from the *Suesz* panel decision called for

5

*Newsom* to be overruled. *See Suesz*, 734 F.3d at 691-95 (Posner, J., dissenting). Two months later, or four months before Blatt filed that action, the Seventh Circuit granted en banc review in *Suesz*, vacating the panel decision. It took a majority of the Seventh Circuit's active judges to grant en banc review. *See* Fed. R. App. P. 35(a). Is it possible that the majority decided that it was worth the substantial time and effort required by an en banc hearing even while anticipating that, at the end of the day, the en banc court would conclude, "You know what, *Newsom* had it right all along"? Perhaps, but any reasonably observant lawyer would have known that *Newsom* faced a substantial risk of being overruled. And Blatt was guided by a highly observant lawyer, not just a reasonably observant one; in an effort to show that it had adopted reasonable procedures to avoid FDCPA errors, Blatt noted that its executive director "stays current with the FDCPA and applicable case law," "stay[s] abreast of changes in the law and developments in the industry," "regularly reviews various publications and listserves that focus on the FDCPA and new case law," and "regularly consults with and receives FDCPA updates" from experts in the field. Doc. 33 at ¶¶ 17-18, 22-23. Yet despite being fully aware of the dark clouds gathering over *Newsom*, Blatt still elected to file its collection action against Desfassiaux at the Daley Center rather than play it safe by filing in Maywood. In so doing, Blatt made the legal judgment—its *own* legal judgment—that *Newsom* would survive en banc review in *Suesz* or that its overruling would not be made retroactive. *Jerman* forecloses a bona fide error defense under those circumstances. *See Portalatin*, 2015 WL 5117077, at *4 (holding that Blatt could not invoke the bona fide error defense because "the firm *did* exercise legal judgment: it chose to file in downtown Chicago when it just as easily could have filed, appropriately, in the Fourth Municipal District"); *cf. Kort*, 394 F.3d at 532-34 (pre-*Jerman* opinion holding that the bona fide error defense applied where the Department of Education, interpreting a different federal statute,

6

required the debt collector to use a form notice that violated the FDCPA, thus placing the debt collector in an untenable Catch-22).

The court of course understands that all precedents are subject to being overruled by the rendering court at any time. Yet overrulings occur in different ways, and there is a difference between an overruling without any prior public notice, such as through a Circuit Rule 40(e) circulation, and an overruling that follows the public grant of en banc review. *See* 7th Cir. R. 40(e) ("*Rehearing Sua Sponte before Decision.* A proposed opinion approved by a panel of this court adopting a position which would overrule a prior decision of this court … shall not be published unless it is first circulated among the active members of this court and a majority of them do not vote to rehear en banc the issue of whether the position should be adopted."); *Chapman v. First Index, Inc.*, 796 F.3d 783, 787 (7th Cir. 2015) (invoking Circuit Rule 40(e)); *Boley v. Colvin*, 761 F.3d 803, 808 (7th Cir. 2014) (same). If the Seventh Circuit had overturned *Newsom* through the vehicle provided by Circuit Rule 40(e) and without prior public notice, the bona fide error issue would be close, for Blatt could not reasonably have known that *Newsom*, after eighteen undisturbed years on the books, had been placed squarely on the chopping block. The circumstances of this case, however, present no such difficulties, so the court need not address whether Blatt could have invoked the bona fide error defense had the Seventh Circuit overruled *Newsom* in conjunction with a Circuit Rule 40(e) circulation. Nor need the court address whether a debt collector that filed a debt collection action prior to the grant of en banc review in *Suesz* could successfully invoke the defense.

Blatt next contends that the FDCPA's safe harbor defense, 15 U.S.C. § 1692k(e), protects it from liability. Doc. 26 at 21. That provision states:

> No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the

> [Consumer Financial Protection] Bureau, notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

15 U.S.C. § 1692k(e). Blatt argues that if Congress allowed debt collectors to rely on then-prevailing Consumer Financial Protection Bureau ("CFPB") advisory opinions, then it necessarily would have wanted to allow debt collectors to rely on then-prevailing appeals court opinions like *Newsom*. Blatt's argument may be sound as a policy matter—or it may not, for as *Jerman* explained, the purpose of authorizing the CFPB to issue advisory opinions was to encourage debt collectors to seek agency guidance regarding compliance with the FDCPA. *See Jerman*, 559 U.S. at 587 (noting that Congress, in enacting § 1692k(e), "evidently contemplated [a role for the agency] in resolving ambiguities in the Act," and reasoning that if the bona fide error defense were interpreted to encompass errors of law, "debt collectors might have an affirmative incentive not to seek an advisory opinion to resolve ambiguity in the law, as receipt of such advice would prevent them from claiming good-faith immunity for violations"). But regardless of its merits as a policy matter, Blatt's argument fails as a matter of statutory interpretation. *See Hillman v. Maretta*, 133 S. Ct. 1943, 1953 (2013) ("[W]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."); *Alabama v. North Carolina*, 560 U.S. 330, 352 (2010) ("We do not—we cannot—add provisions to a federal statute."); *Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (rejecting an argument that would result "not [in] a construction of [the] statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope," reasoning that there "is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted") (alterations in original); *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 462 (2002) ("When the words of a statute are

unambiguous, then, this first canon is also the last: judicial inquiry is complete. … [P]arties should not seek to amend the statute by appeal to the Judicial Branch.") (internal quotation marks omitted). The only safe harbor recognized by § 1692k(e) is provided by CFPB advisory opinions, and that is that. *See Rowan*, 2015 WL 5920873, at *5 (declining to extend the safe harbor to a debt collector who relied on *Newsom*); *Conroy*, 2015 WL 5821642, at *3 (same); *Portalatin*, 2015 WL 5117077, at *4 (same); *but see Oliva*, 2015 WL 4253795, at *4 (holding that the safe harbor applies in post-*Suesz* cases).

Finally, Blatt argues that applying *Suesz* retroactively to it would violate due process. Doc. 26 at 21-26. In *Suesz*, the Seventh Circuit offered two reasons for applying retroactively its new interpretation of § 1692i(a)(2):

> First, reliance on prior law is insufficient in itself to justify making a new judicial ruling prospective. Second, a prior decision of one intermediate appellate court does not create the degree of certainty concerning an issue of federal law that would justify reliance so complete as to justify applying a decision only prospectively in order to protect settled expectations. Prospective overruling on reliance grounds is impermissible unless the law had been so well settled before the overruling that it had been unquestionably prudent for the community to rely on the previous legal understanding.

757 F.3d at 649-50 (citations omitted). Blatt submits that the Seventh Circuit limited its retroactive application to "debt collectors from Marion County"—the Indiana county whose multi-district court system was at issue in *Suesz*—and that it would be unfair to apply a new rule to litigants who had no notice that the law was about to change.

These arguments fail to persuade. Nowhere does *Suesz* allow for any distinction between debt collectors who sue in Marion County and those who sue in Cook County. Rather, *Suesz* suggests that *any* reliance on *Newsom*—"a prior decision of one intermediate appellate court"— is insufficient to avoid retroactive application of its new interpretation of § 1692i(a)(2). *See Portalatin*, 2015 WL 5117077, at *5 ("The Seventh Circuit gave no indication that it intended its

holding to apply retroactively only in that particular case, and there is no good reason to read *Suesz* that way."). Moreover, for the reasons given above, it is impossible on this record to conclude that Blatt had no notice of the risk that *Newsom* might be overturned. Thus, even if due process might under some circumstances prohibit the retroactive application of a new judicial precedent to non-parties, *cf. Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."); *Velasquez-Garcia v. Holder*, 760 F.3d 571, 580 (7th Cir. 2014) ("The presumption against retroactive application of legal rules is reversed, however, in the special case where a court furnishes the new rule."), those circumstances are not present here.

Blatt's summary judgment motion accordingly is denied. That said, this case—which involves *both* a plaintiff who suffered no injury whatsoever *and* a defendant whose conduct complied with then-prevailing Seventh Circuit precedent—is hardly the most productive use of anybody's time. The continued pendency of this suit calls to mind questions that the Seventh Circuit recently posed in *Chapman v. First Index, Inc.*, *supra*: "[W]hy should a court supply a subsidized dispute-resolution service when the defendant's offer [of judgment] means that there's no need for judicial assistance, and when other litigants, who do need the court's aid, are waiting in a queue? Ordering a defendant to do what it is willing to do has no legitimate claim on judicial time. Why should a judge do legal research and write an opinion on what may be a complex issue when the plaintiff can have relief for the asking?" 796 F.3d at 788. There is no offer of judgment here, but one still might ask whether there is any conceivable social benefit to continuing to litigate this case. The question is particularly salient given the Supreme Court's

10

grant of certiorari in *Spokeo, Inc. v. Robins*, No. 13-1339, which presents the question "[w]hether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute."

If *Spokeo* answers that question in the negative, Desfassiaux's claims might be subject to dismissal for want of standing. Blatt has moved to stay this case pending the Supreme Court's decision in *Spokeo*. Doc. 48. The court entered and continued the stay motion in light of Blatt's then-pending summary judgment motion, but now that summary judgment has been denied, the court will ask Desfassiaux to respond to the stay motion by November 13, 2015, and Blatt to reply by November 20, 2015.

October 30, 2015

_____
United States District Judge